GREGORY M. SCHULMAN, ESQ.
Nevada Bar No. 5766
THORNDAL ARMSTRONG, PC
600 S. Las Vegas Boulevard, Suite 400
Las Vegas, NV 89101
Tel: (702) 366-0622
Fax: (702) 366-0327
gms@thorndal.com

Attorney for Plaintiff
ACUITY

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| ACUITY, A Mutual Insurance Company,<br><br>　　　　　　　Plaintiff,<br><br>vs.<br><br>REAL PROPERTY MANAGEMENT OF LAS VEGAS, LLC DBA RENTMAX PROPERTY MANAGEMENT, a limited liability company; PATRICIA SNYDER, an individual,<br><br>　　　　　　　Defendants. | CASE NO.  2.25-cv-00704<br><br>**PLAINTIFF ACUITY'S MOTION FOR SUMMARY JUDGMENT** |

COMES NOW Plaintiff, Acuity, by and through its attorneys of record, Thorndal Armstrong, and hereby moves for summary judgment on its claims and on defendant Real Property Management of Las Vegas, LLC's counterclaim.  This motion is made and based upon the points and authorities attached hereto, the papers and pleadings on file herein, and any oral argument that may be presented to the Court.

/ / /

/ / /

/ / /

## MEMORANDUM OF POINTS AND AUTHORITES

### I.     INTRODUCTION

This case involves a home rented by defendant Patricia Snyder. The property was owned by non-parties Nuria and Niobel Santos. Defendant REAL PROPERTY MANAGEMENT OF LAS VEGAS ("Rentmax") was the property manager for the rental property. In the underlying litigation, defendant PATRICIA SNYDER ("Snyder") sued the Santoses and Rentmax for injuries sustained as a result of the alleged mold infestation. Rentmax sought defense and indemnity from its insurer, Acuity, related to Ms. Snyder's claims.

Acuity's insurance policies covering Rentmax clearly exclude coverage for claims and/or damages resulting from mold and other fungi. This motion seeks this Court to declare that Acuity's insurance policies provide Rentmax no coverage relating to Ms. Snyder's claims and that Acuity is not obligated to defend and/or indemnify Rentmax for claims arising from the litigation Ms. Snyder initiated.

The lack of coverage relating to Ms. Snyder's complaint loss means there is no manner in which Rentmax's counterclaim can be sustained. As there is no coverage, there can be no duty to defend and/or indemnify or breach of contract, which are the causes of action asserted in the counterclaim. Accordingly, the counterclaim must also be dismissed.

### II.    STATEMENT OF MATERIAL FACTS NOT IN DISPUTE

The following are facts *assumed* to be true for purposes of this motion and in accordance with FRCP 56 only. Acuity reserves the right to challenge any and all facts should its motion be denied.

1. Acuity insured Rentmax through a series of yearly insurance policies, all with the same policy number, ZF2374, beginning on March 11, 2020. *See* **Exhibits 1-4**, Insurance

Policies.

2. The policies were in effect from March 6, 2020 through March 6, 2024. *See* **Exhibits 1-4**.

3. The policies contain the following provisions regarding Fungi coverage:

    1. **The following exclusion is added** to Paragraph 2, Exclusions of Section I - Coverage A – *Bodily Injury* and *Property Damage* Liability:

Fungi or Bacteria

    a. ***Bodily injury* or *property damage* which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any fungi** or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage.

    b. Any loss, cost or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, fungi or bacteria, by any insured or by any other person or entity.

This exclusion does not apply to any fungi or bacteria that are, are on, or are contained in, a good or product intended for bodily consumption.

    2. The following exclusion is added to Paragraph 2, Exclusions of Section I - Coverage B – *Personal and Advertising Injury* Liability:

Fungi or Bacteria

    a. ***Personal and advertising injury* which would not have taken place, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of any fungi** or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event,

      material or product contributed concurrently or in any sequence to such injury.

    b. Any loss, cost or expense arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, fungi or bacteria, by any insured or by any other person or entity.

   3. The following definition is added to the Definitions Section:

    "*Fungi*" means any type or form of fungus, **including mold or mildew and any mycotoxins, spores, scents or byproducts produced or released by fungi.**

*See* **Exhibit 1** at p. 93; **Exhibit 2** at p. 94; **Exhibit 3** at p. 99; **Exhibit 4** at p. 88 (emphasis added).

 4. The insurance policies also state that "we [Acuity] will have no duty to defend the insured against any suit seeking damages for *Bodily injury* or *property damage* to which this insurance does not apply." *See* **Exhibit 1** at pg. 73; **Exhibit 2** at p. 74; **Exhibit 3** at p. 77; **Exhibit 4** at p. 66.

 5. Snyder rented a home located at 5904 Middle Rock St., North Las Vegas, NV 89081 ("property"), which was being managed by Rentmax. *See* **Exhibit 5** Snyder's Complaint in Clark County, Nevada District Court Case No. A-24-885921-C at ¶ 9.

 6. Rentmax operated and/or managed the property. *See* **Exhibit 5** at ¶ 11.

 7. In or around March 2020, Snyder discovered a water leak under the kitchen sink, which appeared to be due the result of a broken faucet. *See* **Exhibit 5** at ¶ 13.

 8. Rentmax failed to timely repair the leak damage. *See* **Exhibit 5** at ¶¶ 14-18.

 9. Shortly thereafter, Snyder began experiencing persistent and chronic physical symptoms for which she sought medical care. *See* **Exhibit 5** at ¶¶ 20-21.

10.     In or about early August 2021, another water leak occurred at the property emanating from the ceiling into the dining room area, which she reported. *See* **Exhibit 5** at ¶¶ 22-23.

11.     On or about January 18, 2022, water once again began leaking from the bathroom and coming through the ceiling into the downstairs area of the property, which Snyder again reported. *See* **Exhibit 5** at ¶¶ 28-29.

12.     Due to the persistent water leaks and Snyder's ongoing health problems, she suspected mold might be present in the property. *See* **Exhibit 5** at ¶ 30.

13.     On or about January 31, 2022, Snyder retained a professional mold testing company to conduct an air quality test at the property, which returned results showing elevated levels of mold. *See* **Exhibit 5** at ¶ 31.

14.     Another mold test was conducted on February 7, 2022, again demonstrating elevated levels of mold in multiple areas at the property. *See* **Exhibit 5** at ¶ 32.

15.     Snyder believes the presence of mold at the property resulted from Rentmax's inadequate repairs. *See* **Exhibit 5** at ¶ 33.

16.     Had Rentmax timely performed maintenance and performed maintenance and repairs fully and properly, Snyder would not have been subjected to long-term exposure to mold. *See* **Exhibit 5** at ¶¶ 38-39.

17.     As a result of Rentmax's conduct, Snyder's exposure to the mold caused her to sustain chronic injuries, necessitating professional medical treatment and resulted in other injuries and damages. *See* **Exhibit 5** at ¶¶ 40-43.

18.     On January 26, 2024, Snyder filed a complaint in Clark County, Nevada District Court, Case No. A-24-885921-C. *See* **Exhibit 5**, at p. 1.

19. Snyder named Rentmax as a defendant in that action. *See* **Exhibit 5**, at p. 1.

20. Snyder's action against Rentmax includes causes of action for (1) Negligence and/or Gross Negligence; (2) Intentional Infliction of Emotional Distress; (3) Breach of Implied Warranty of Habitability; (4) Breach of Covenant of Good Faith and Fair Dealing; (5) Nuisance; and (6) Breach of Contract. *See* **Exhibit 5**, at ¶¶ 45-109.

21. All of Snyder's causes of action against Rentmax are based upon her alleged exposure to mold/environmental toxins. *See* **Exhibit 5**, at ¶¶ 45-109.

22. Rentmax filed a counterclaim against Acuity asserting causes of action for (1) Declaratory Relief – Duty to Defend and Indemnify and (2) Breach of Contract – Insurance Policy.

### III.   SUMMARY JUDGMENT STANDARD

"A party may move for summary judgment, identifying each claim or defense--or the part of each claim or defense--on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FRCP 56(a). "A material issue of fact is one that affects the outcome of the litigation and requires a trial to resolve the differing versions of the truth." *Newhouse v. United States*, 844 F. Supp. 1389, 1392 (D. Nev. 1994). "The party moving for summary judgment has the initial burden of showing the absence of a genuine issue of material fact." *Id.* "All facts and inferences drawn must be viewed in the light most favorable to the responding party when determining whether a genuine issue of material fact exists for summary judgment purposes. *Poller v. CBS, Inc.*, 368 U.S. 464, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962). After drawing inferences favorable to the respondent, summary judgment will be granted only if all reasonable inferences defeat the respondent's claims. *Admiralty Fund*

*v. Tabor,* 677 F.2d 1297, 1298 (9th Cir.1982)."

However, when a non-moving party's claims are factually "implausible, that party must come forward with more persuasive evidence than would otherwise be [required]...." *California Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.,* 818 F.2d 1466, 1468 (9th Cir1987), *cert denied,* 484 U.S. 1006 (1988). The Ninth Circuit has held, "No longer can it be argued that any disagreement about a material issue of fact precludes the use of summary judgment." *Id.*

In this case, only issues of law exist for the Court to decide. There are no disputed issues of fact, as Ms. Snyder's claims against Rentmax undoubtedly relate to her mold exposure while renting an apartment. The law supports granting summary judgment in Acuity's favor. There can be no dispute that the policies Acuity issued to Rentmax during the relevant time period do not provide coverage for any claim Snyder is asserting against Rentmax. No matter what the outcome of Snyder's claims against Rentmax, Acuity has no duty to defend or indemnity Rentmax because Snyder's claims all relate to the mold exclusion in Acuity's insurance policies. Because no coverage exists, Acuity is entitled to summary judgment.

IV. **ACUITY HAS NO OBLIGATION TO DEFEND AND/OR INDEMNIFY THE RENTMAX DEFENDANTS BECAUSE THE POLICY CONTAINED AN EXCLUSION FOR THE PARTICULAR DAMAGES THAT OCCURRED**

"The concept of insurance is that the parties, in effect, wager against the occurrence or non-occurrence of a specified event; the carrier insures against a risk, not a certainty." *Baugh v. Cont'l Cas. Co.,* 972 F.2d 1336 (9th Cir. 1992), quoting <u>Bartholomew v. Appalachian Ins. Co.,</u> 655 F.2d 27, 29 (1st Cir. 1981). "[T]he purpose of insurance is to protect insureds against unknown risks." *Appalachian Ins. Co. v. Liberty Mut. Ins. Co.,* 676 F.2d 56, 63 (3d Cir. 1982). Under Nevada law, "if an insurer wishes to exclude coverage by virtue of an exclusion in its

policy," the insurer "must (1) write the exclusion in obvious and unambiguous language in the policy, (2) establish that the interpretation excluding covering under the exclusion is the only interpretation of the exclusion that could fairly be made, and (3) establish that the exclusion clearly applies to this particular case." *Powell v. Liberty Mut. Fire Ins. Co.*, 127 Nev. 14, 252 P.3d 668, 674 (2011).

The court assesses insurance policy language the same as any other contract. *Starr Surplus Lines Ins. Co. v. Eighth Jud. Dist. Ct. in & for Cnty. of Clark*, 139 Nev. Adv. Op. 32, 535 P.3d 254, 260 (2023). The court evaluates the policy language as a whole in order to avoid absurd results. *Id.* at 267. The *Starr* case continued with the further requirements of proof of an insurance policy exclusion:

> An exclusion "must be narrowly tailored so that it 'clearly and distinctly communicates to the insured the nature of the limitation, and specifically delineates what is and is not covered.'"…Therefore, the onus falls on the insurer to use "obvious and unambiguous language" in drafting the exclusion, indicative of the "only reasonable interpretation."…An insurer also carries the burden of "establish[ing] that the exclusion plainly applies to the particular case before the court."…; *see also* Stempel & Knutsen, *supra* § 15.01[C] ("[E]stablished coverage can be defeated or reduced only if the insurer shoulders the burden of persuasion to establish the applicability of an exclusion ... that reduces or restricts coverage.").

*Id.*

However, "the court may not 'rewrite contract provisions that are otherwise unambiguous or increase an obligation to the insured where such was intentionally and unambiguously limited by the parties.'" *Goodrich v. Garrison Prop. & Cas. Ins. Co., Inc.*, 526 F. Supp. 3d 789, 797 (D. Nev. 2021), quoting *United Nat'l Ins. Co. v. Frontier Ins. Co., Inc.*, 120 Nev. 678, 99 P.3d 1153, 1157 (2004).

Courts have upheld mold exclusions similar to the one on the Rentmax policies. For example, in *Westfield Ins. Co. v. Barick*, No. 2:06-CV-288-PRC, 2008 WL 938330, at *11

(N.D. Ind. Apr. 3, 2008), the court upheld the exclusion with the following exclusion:

> **"Bodily injury"** or **"property damage"** **which would not have occurred**, in whole or in part, **but for the actual, alleged or threatened inhalation of, contact with, exposure to, existence of, or presence of, "fungi"** or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage....

The *Westfield* policy defined "fungi" as "any type or form of fungus, **including mold** or mildew and any myotoxins, spores, scents or byproducts produced or released by fungi." *Id.* (emphasis added).

Acuity's exclusion language for mold injuries is identical to that in *Westfield*:

> ***Bodily injury*** or *property damage* **which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any fungi** or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage.
> ...
> **"*Fungi*"** means any type or form of fungus, **including mold** or mildew and any mycotoxins, spores, scents or byproducts produced or released by fungi. (Emphasis added).

Applying this same exclusion, the court in <u>Nationwide Mut. Fire Ins. Co. v. Dillard House, Inc.</u>, 651 F. Supp. 2d 1367, 1377 n.12 (N.D. Ga. 2009) held, "[i]n a case where a plaintiff alleges injuries stemming from bacteria or mold in a wall having seeped into the ambient air—the very type of claim intended to be excluded in the first place—there is no doubt that the insurer will not be liable," because the policy exclusion applies.

Other courts have granted insurers summary judgment for declaratory relief with the same or similar mold exclusion provisions, finding the insurers had no duty to defend *or* indemnity the insured from third party injury claims. *See, e.g., Tower Ins. Co. of New York v. Pima Lansing, LLC*, No. 1:14-CV-02271, 2015 WL 3777405, at *1 (N.D. Ill. June 16, 2015);

*Scottsdale Ins. Co. v. Good Karma Holdings LLC*, 500 F. Supp. 3d 634, 637 (W.D. Ky. 2020); *Hawkesworth v. Nationwide Mut. Ins. Co.*, No. 2:10-CV-232-GZS, 2011 WL 2471741, at *6 (D. Me. June 21, 2011); <u>NGM Ins. Co. v. Low Country Finish Carpentry, Inc.</u>, No. CV 2:11-1016, 2012 WL 13005316, at *4 (D.S.C. Oct. 31, 2012).

This Court also previously upheld on summary judgment the validity of a similar mold exclusion. <u>Rockhill Ins. Companies v. CSAA Ins. Exch.</u>, No. 317CV00496HDMWGC, 2019 WL 3767466, at *2 (D. Nev. Aug. 9, 2019), <u>aff'd</u>, 829 F. App'x 808 (9th Cir. 2020) (upholding exclusion for "'Organic pathogen' means any organic irritant or contaminant, including but not limited to mold, fungus, bacteria or virus, including but not limited to their byproduct such as mycotoxin, mildew, or biogenic aerosol.")

In this case, all of Snyder's claims in the underlying tort litigation arise from her alleged exposure to mold while renting the residence Rentmax was managing. Under any possible interpretation of the mold exclusion of Acuity's policies in effect that could possibly provide coverage between the beginning of when Snyder might have been exposed to mold and her injuries,[1] the exclusion applies.

Ms. Snyder's damages and allegations exclusively relate to her exposure to mold and/or other toxins excluded under the Acuity policies. All her claims relate to personal injuries resulting from exposure to the mold and/or other toxins excluded under the policies. Because her claims are covered by the policy exclusion, Acuity is entitled to summary judgment.

The policy exclusion, and others similar to it, was clear and unambiguous. They have been upheld by numerous other courts as unambiguous. *See supra.* Acuity has satisfied the

---

[1] Acuity is not admitting all four of its insurance policies apply, as once the claim was known no subsequent policies would apply. Regardless, Acuity is including all four policies in case defendants argue one or more of the policies provide coverage for Snyder's claims.

three requirements to uphold the exclusion. The exclusion language is (1) obvious and unambiguous. Acuity has (2) established the interpretation excluding covering under the exclusion is the only interpretation of the exclusion that could fairly be made. Acuity has (3) established the exclusion clearly applies to this particular case. Because there is no dispute there is no coverage relating to Ms. Snyder's claims against Rentmax, Acuity is entitled to summary judgment.

### V. RENTMAX'S COUNTERCLAIM IS PRECLUDED BY THE ABSENCE OF COVERAGE

"To prevail on a claim for breach of contract, the plaintiff must establish (1) the existence of a valid contract, (2) that the plaintiff performed, (3) that the defendant breached, and (4) that the breach caused the plaintiff damages." *Iliescu v. Reg'l Transp. Comm'n of Washoe Cty.*, 138 Nev. Adv. Op. 72, 522 P.3d 453, 458 (Ct. App. 2022). A breach of contract is the material failure to perform "a duty arising under or imposed by agreement." *Bernard v. Rockhill Dev. Co.*, 103 Nev. 132, 135, 734 P.2d 1238, 1240 (1987) (internal quotation marks omitted).

In this case, while there is a valid contract, Acuity has, as a matter of law, not breached the contract because the mold exclusion applies. All of Ms. Snyder's alleged damages pertain to items covered by the policy exclusion. As there is no breach of contract, Acuity is entitled to summary judgment on Rentmax's counterclaim.

This applies to both of the counterclaims' causes of action for duty to defend/indemnify and breach of contract. The duty to defend/indemnify arises from the contract. However, as Ms. Snyder's claims are covered by the policy exclusion, the insurance policy, by its terms exclude the duty to defend and/or indemnify when there is no coverage. Accordingly, Acuity should be granted summary judgment as to Rentmax's counterclaim.

## VI. CONCLUSION

Based on the foregoing, Acuity requests this Court grant its motion for summary judgment on its complaint against defendants and grant it summary judgment as to Rentmax's counterclaim.

DATED this 21st day of July, 2025.

THORNDAL ARMSTRONG, PC

/s/ Gregory M. Schulman
_____
Gregory M. Schulman, Esq.
Nevada Bar No. 5766
600 S. Las Vegas Boulevard, Suite 400
Las Vegas, NV 89101

Attorney for Defendant
ACUITY

**CERTIFICATE OF SERVICE**

Pursuant to NRCP Rule 5(b), I hereby certify that I am an employee of the law firm of THORNDAL ARMSTRONG, PC, and that on this 21st day of July, 2025, a copy of **PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** was served upon each of the parties via electronic service through the Eighth Judicial District Court's Odyssey E-File and Serve System.

| NAME | TEL., FAX., and EMAIL | PARTY REPRESENTING |
|---|---|---|
| Patrick W. Kang, Esq.<br>Kyle R. Tatum, Esq.<br>Adam L. Gill, Esq.<br>ACE LAW GROUP<br>6480 W. Spring Mountain Road<br>Suite 1<br>Las Vegas, NV 89146 | Tel: (702) 333-4223<br>Fax: (702) 507-1468<br><br>E-Mail:<br>filing@acelawgroup.com | Defendant<br>Patricia Snyder |
| G. MARK ALBRIGHT, ESQ.<br>Nevada Bar No. 001394<br>WILLIAM H. STODDARD, JR., ESQ.<br>Nevada Bar No. 008679<br>ALBRIGHT, STODDARD, WARNICK & ALBRIGHT<br>801 South Rancho Drive, Suite D-4<br>Las Vegas, Nevada 89106 | Tel: (702) 384-7111<br>Fax: (702) 384-0605<br>gma@albrightstoddard.com<br>bstoddard@albrightstoddard.com | Real Property Management Of Las Vegas, LLC Dba Rentmax Property Management |

*/s/ Bonnie Hastings*
An Employee of Thorndal Armstrong, PC